UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Sharon Harrell,

*Plaintiff*,

vs.

Paramount Recovery Systems, L.P.,

*Defendant*

Case No.: 8:21-cv-1538

JURY TRIAL DEMANDED

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Sharon Harrell** ("**Ms. Harrell**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Paramount Recovery Systems, L.P.** ("**Paramount**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Ms. Harrell against Paramount for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**") and for violations of the *Fair Credit Reporting Act*, 15 U.S.C. §1681, *et seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. Paramount is subject to the provisions of the FDCPA and the FCRA and to the jurisdiction of this Court pursuant to Florida Statute § 48.193 and Fed. R. Civ. P. 4(k).

1

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the acts complained of were committed and / or caused by Paramount within Hillsborough County, which is in the Middle District of Florida.

## PARTIES

5. **Ms. Harrell** is a natural person residing in Riverview, Hillsborough County, Florida, and a *Consumer* as defined by the FDCPA and the FCRA, 15 U.S.C. § 1692a(3) and 15 U.S.C. §1681a(c), respectively.

6. **Paramount** is a Texas limited partnership with a primary business address of **7524 Bosque Blvd. Suite L, Waco, TX 76712.**

7. Paramount is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

8. Paramount is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that it uses postal mail or another instrumentality of commerce, interstate and within the State of Florida, for its business, the principal purposes of which is the collection of debts. Alternatively, it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

9. Paramount is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("**CCA**"), holding license number **CCA0900537.**

## FACTUAL ALLEGATIONS

10. In November 2016, Ms. Harrell allegedly had a past-due balance owed to Baycare Medial Group. ("**Baycare**") (the "**alleged Debt**" or "**Debt**").

11. The Debt arose from services which were for family, personal, or household purposes, and meets the definition of "debt" under the FDCPA, 15 U.S.C. § 1692a(5).

12. Ms. Harrell disputes owing the Debt.

13. In or around December 2020, Baycare transferred or otherwise assigned the Debt to Paramount for collection.

14. Baycare alleged that the amount of the Debt was $578, rounded to the nearest whole dollar.

15. In February 2021, Paramount reported the Debt to Experian Information Solutions, Inc ("**Experian**") and Equifax Information Services, LLC ("**Equifax**"), two nationwide *Consumer Credit Reporting Agencies* ("**CRAs**").

16. On or about March 7, 2021, Ms. Harrell disputed Paramount's reporting to Experian.

17. Experian then sent Paramount an *Automated Consumer Dispute Verification* ("**ACDV**") request and asked Paramount to make a reasonable investigation into the dispute.

18. Upon receipt of the ACDV request, Paramount knew that Ms. Harrell disputed the Debt.

19. The ACDV was sent via e-OSCAR, an online system used by CRAs to communicate with furnishers of data, such as debt collectors.

20. When responding to an ACDV through e-OSCAR, the person sending the response must electronically sign to confirm as follows:

> [b]y submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted.

21. Paramount returned the ACDV to Experian, verifying it had completed its investigation and that all of its information was accurate.

22. Paramount instructed Experian to report a Metro 2 "compliance condition code" ("**CCC**") "XH" meaning "account **previously** in dispute – investigation complete, reported by data furnisher" (emphasis added).

23. In cooperation with the major CRAs, the Consumer Data Industry Association ("**CDIA**") publishes the Metro 2 reporting standards to assist furnishers with their compliance requirements under the FCRA.

24. According to the CDIA, its reporting products are used in more than nine billion transactions each year.

25. The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA.

26. The Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards.

4

27. The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

28. Equifax and Experian require its furnishers of data, like Paramount, to report data according to Metro 2 standards.

29. Paramount did not adhere to Metro 2 standards when it reported the Debt was "updated from our processing of your dispute in March 2021" since the "XH" CCC is applicable only to situations where information was disputed and the consumer *later indicates to the data furnisher his/her dispute has been resolved*. **SEE EXHIBIT A.**

30. Failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willful violation of the FCRA. See *Gillespie v. Equifax Info. Servs., LLC.*, No. 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008).

31. Paramount, upon information and belief, was claiming that by it investigating the "debt" and determining—on its own – it believed Ms. Harrell owed $578, the account was no longer disputed since Paramount unilaterally determined it was right and Ms. Harrell wrong.

32. For a debt to be legitimately reported as "previously in dispute," or "updated from our processing of your dispute…" the two parties to the dispute must reach accord and agreement as to if the debt is owed; the plain meaning of the word dispute -- "to argue about (something); discuss heatedly" – inherently means that two or more parties disagree on a particular issue.

33. At no point did Ms. Harrell indicate, or even imply, to Paramount that she agreed she owed the debt and no longer disputed it.

34. Thus, Paramount had no reason to believe that the Debt was no longer disputed by Ms. Harrell.

35. Indeed, Paramount had every reason to believe the opposite, that Ms. Harrell actively disputed the debt.

36. The "plain language of the 'XH' code implies any dispute the consumer previously had about the account is settled, or a solution has been found." *Wood v. Credit One Bank*, No. 3:15-cv-594 (E.D. Va. Sept. 21, 2017).

37. Paramount could have reported a Metro II compliance condition code of "XB," meaning "consumer disputes this information," but did not.

38. When responding to an ACDV and indicating information and been verified as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.* (11th Cir.) 827 F.3d 1295 (2016)

39. No evidence could have been gathered by Paramount to support the conclusion the Debt was "previously disputed" and "now resolved" since Paramount possessed only evidence suggesting the debt was *currently* disputed.

40. The failure to update reporting to indicate a debt is disputed can in and of itself violate the FCRA; see *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008).

41. As such, Paramount's investigation was inherently unreasonable since any reasonable investigation could not have determined an actively disputed debt as "previously" disputed.

### Failure to report disputed debt as disputed

42. On March 17, 2021, Paramount made a *new* report to Equifax which contained a new balance date, a new date reported, and other updated information. **SEE PLAINTIFF'S EXHIBIT B.**

43. Paramount was still obliged to disclose the fact that the Debt was disputed in all communications about the debt, including its March 17, 2021 report to Equifax. *See Semper v. JBC Legal Group*, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005).

44. Paramount had no right to unilaterally nullify Ms. Harrell's dispute. See, *e.g.*, *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337 (7th Cir 2018).

45. Thus, despite having no reason to believe that Ms. Harrell no longer disputed the Debt, Paramount falsely reported that the Debt was no longer disputed.

46. Paramount had no right to determine on its own if the dispute had merit or not; the FDCPA requires a debt collector to communicate a debt is disputed, and 1692e(8) "does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt. *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010) ("[A] consumer can dispute a debt for 'no reason at all ….'")

47. Paramount should have continued to report the Debt with the notation, "account information disputed by consumer."

7

48. The distinction between reporting a debt as "previously in dispute" and currently in dispute is significant since many commercially-used credit scoring algorithms disregard a collection account reported *currently* in dispute, but not those *previously in dispute*, from their score computations.

49. Paramount's failure to disclose that the Debt was currently disputed materially damaged Ms. Harrell's credit scores.

50. The failure to properly report a disputed debt as disputed creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Ms. Harrell suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

51. Reporting a debt to a CRA is an attempt to collect the Debt.

52. Paramount's reports to the CRAs are "communications" as defined by 15 U.S.C. § 1692a(2).

53. Ms. Harrell has hired the aforementioned law firm to represent her in this matter and is obligated to pay its reasonable fees or has assigned her right to fees and costs to the firm.

## COUNT I
## VIOLATIONS OF THE FDCPA

54. Ms. Harrell adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

55. Paramount violated **15 U.S.C. § 1692e and 1692e(10)** in that Paramount made false representations in an attempt to collect a debt by failing to report a disputed debt as disputed, and, to the contrary, implied it was no longer disputed and only "previously" disputed.

56. Paramount violated **15 U.S.C. § 1692e(2)(a)** in that Paramount made false representations about the character and legal status of a debt by failing to report a disputed debt as disputed, and, to the contrary, implied it was no longer disputed and only "previously" disputed.

57. Paramount's conduct violated **15 U.S.C. § 1692e(8)** in that Paramount communicated credit information known to be false by reporting a disputed debt was only *previously* disputed.

58. Paramount's conduct violated **15 U.S.C. § 1692e(8)** in that Paramount communicated credit information known to be disputed without disclosure of dispute in its reports to Equifax and Experian in March 2021.

59. Paramount's actions were willful and intentional as it could not have negligently made reports and responded to disputes to the CRAs.

60. Paramount's actions render Paramount liable for the above-stated violations of the FDCPA.

**WHEREFORE**, Ms. Harrell respectfully requests this Honorable Court enter judgment against Paramount for:

a. Statutory damages of **$1,000** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA

61.    Ms. Harrell adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

62.    Paramount violated **15 U.S.C. § 1681s-2(b)** when it failed to make a reasonable investigation after notice of dispute from a CRA, Equifax, since any reasonable investigation would have concluded that Paramount's reporting was no longer complete or accurate unless modified to include the fact the debt was disputed by the consumer, Ms. Harrell. Instead, Paramount reported information it knew was false, e.g. that the account was *previously* disputed but no longer disputed and had been "resolved."

63.    Paramount's conduct was willful and intentional, or, alternately, was engaged in with a reckless disregard for consumer rights and failed to conform to established Metro 2 standards which Paramount had pledged to follow.

64.    Paramount is liable under the FCRA to Ms. Harrell in a statutory amount up to $1,000 *per incident*.

**WHEREFORE,** Ms. Harrell respectfully requests this honorable Court to enter judgment in her favor, and against Paramount, for:

a.  The greater of Ms. Harrell's actual damages or statutory damages of **$1,000** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(B) or 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Harrell hereby demands a jury trial on all issues so triable.

Respectfully submitted **June 25, 2021**, by:

**SERAPH LEGAL, P.A.**

/s/ *Bridget L. Scarangella*
Bridget L. Scarangella, Esq.
Florida Bar No.: 1022866
BDow@seraphlegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorney for Plaintiff*

**ATTACHED EXHIBITS LIST**
A    Plaintiff's Experian Consumer Disclosure, April 1, 2021, Excerpt
B    Plaintiff's Equifax Consumer Disclosure, April 8, 2021, Excerpt

11